JKMcD: USAO#2020R00375

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN L. FRANKLIN and<br>DUANE G. LARMORE,<br><br>Defendants. | CRIMINAL NO. DKC 21cr328<br>(Conspiracy to Commit Wire Fraud, 18 U.S.C. §1349; Wire Fraud, 18 U.S.C. § 1343; Identity Theft, 18 U.S.C. § 1028A; Forfeiture). |

## INDICTMENT

The Grand Jury for the District of Maryland charges:

## COUNT ONE

At all times material to this Indictment:

1.  Shore Appliance Connection (hereafter "Shore Appliance"), 307A Civic Avenue, Salisbury, Maryland, was a Maryland corporation owned by Owner #1 and Owner #2. Shore Appliance sold household appliances such as kitchen appliances, heating and air conditioning units, grills, washers and dryers as well as mattresses and bedding. Owner #1 and Owner #2 were the directors of Shore Appliance, and Owner #1 was its president.

2.  Owner #1 and Owner #2 brought **DUANE G. LARMORE** (hereafter "**LARMORE**") into their business as an employee and asked him to maintain the books and records of Shore Appliance because **LARMORE** had an accounting degree.

3.  Shore Appliance had its bank accounts ending in ***0406 and ***1301 at Hebron Savings Bank, 1008 W. Main Street, Salisbury, Maryland and lines of credit with Hebron Savings Bank and the Farmers Bank of Willards. **LARMORE** was neither a corporate officer nor an owner of Shore Appliance; **LARMORE** was added as a signatory on Shore Appliance's bank accounts when he began maintaining the books and records of Shore Appliance.

1

4. **STEPHEN L. FRANKLIN** (hereafter "**FRANKLIN**") was the chief executive officer of Accurate Optical, headquartered in Salisbury, Maryland. Accurate Optical had a number of locations on the Eastern Shore of Maryland and offered eye examinations, fittings of contact lenses, eyeglasses, and related services.

5. **FRANKLIN** was also the chief executive officer and part owner of East Coast Optometric. East Coast Optometric had a number of locations in South Carolina and offered eye examinations, fittings of contact lenses, eyeglasses, and related services.

6. As of fall 2016, East Coast Optometric and Accurate Optical had bank accounts at Bank of America, 300 Tilghman Road, Salisbury, Maryland 21804.

## THE SCHEME TO DEFRAUD

7. From in and around September 2016 and continuing until in and around March 2020, in the District of Maryland and elsewhere, the defendants,

**STEPHEN L. FRANKLIN and**
**DUANE G. LARMORE,**

and others known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud Shore Appliance, Owner #1, and Owner #2 and to obtain money and property from Shore Appliance, Owner #1, and Owner #2 by means of materially false and fraudulent pretenses, representations and promises ("the Scheme to Defraud.")

## THE CONSPIRACY TO COMMIT WIRE FRAUD

8. From in and around September 2016 and continuing until in and around March 2020, in the District of Maryland and elsewhere, the defendants,

**STEPHEN L. FRANKLIN and
DUANE G. LARMORE,**

and others known and unknown to the Grand Jury, did knowingly and willfully conspire, combine, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to commit wire fraud, that is to knowingly execute and attempt to execute the scheme to defraud through the use of interstate and foreign wires in violation of Title 18, United States Code, Section 1343.

## THE PURPOSE OF THE CONSPIRACY AND SCHEME TO DEFRAUD

9. The purpose of the conspiracy and scheme to defraud was

(a) for **FRANKLIN** and **LARMORE,** the co-schemers and co-conspirators, to take in excess of $900,000 belonging to Shore Appliance and without the knowledge and consent of Owner #1 and Owner #2, to use these funds for the purposes of **FRANKLIN** and **LARMORE** including:

(1) to make investments chosen by **FRANKLIN** and **LARMORE;** and

(2) to provide funds belonging to Shore Appliance to **FRANKLIN** for his purposes including the business expenses of Accurate Optical and East Coast Optometric; and

(b) for **FRANKLIN** and **LARMORE,** the co-schemers and co-conspirators, to fund and conceal their illegal use of funds belonging to Shore Appliance by

(1) using the identities of Owner #1 and Owner #2 to enter into factoring contracts purportedly between Shore Appliance and various factoring companies, which provided cash

3

deposits to Shore Appliance's bank accounts but which required, in initial and continuing payments, funds in excess of $725,000, and encumbered the accounts receivable of Shore Appliance and

(2) drawing on Shore Appliance's lines of credit with Hebron Savings Bank and Farmers Bank of Willards to deposit $200,000 into Shore Appliance's bank accounts to provide cash, which required additional interest payments to the banks.

## MANNER AND MEANS OF THE CONSPIRACY and SCHEME TO DEFRAUD

It was a part of the Manner and Means of the Conspiracy and Scheme to Defraud that:

10. **FRANKLIN** looked for various investment opportunities for **LARMORE** such as (a) in 2016, a $100,000 investment with T.H.; a $95,000 investment with GenFinance II, PLC, London, U.K., which then required an additional $300,000; and then additional funds for a surety bond and travel abroad;

(b) in 2018, an investment through W.S. of $35,000 and an investment through J.B. of $50,000; and

(c) in 2019 - 2020, investments and expenses through I.P. and E. P.-S. to obtain U.S. currency purportedly returned to the United States from humanitarian relief projects abroad, and other similar investments.

These investments never earned any money.

11. The $95,000 investment with GenFinance II, PLC, was purportedly for the lease of a $40 million Standby Letter of Credit ("SBLC") issued by Barclays Bank, London, for the benefit of Simpatrans Oil & Gas, Ltd., which purportedly had an account at Raiffeisen Bank, S.A, in Romania. The SBLC was intended to fund the purchase of oil from Simpatrans which

would be stored in a tank in The Netherlands and then brought by tanker ship to the United States for sale. The $95,000 investment was promised to return $1.2 million monthly beginning in the third month after the investment.

12.   Neither **FRANKLIN** nor **LARMORE** had sufficient personal funds to make these investments; however, because of **LARMORE**'s position of trust with Shore Appliance and **LARMORE**'s signature authority over Shore Appliance's bank accounts, **LARMORE** and **FRANKLIN** used Shore Appliance's cash, its lines of credit with the Farmer's Bank of Willards and Hebron Bank, and funds obtained through factoring contracts pledging Shore Appliance's accounts receivable to make the investments.

13.   **LARMORE**, without the knowledge or permission of Owner #1 and Owner #2, transferred Shore Appliance monies for investments to East Coast Optometric at its Bank of America account, and thus into the control of **FRANKLIN,** or wire-transferred funds directly for the purported investments.

14.   **FRANKLIN** made investments using Shore Appliance's funds by transferring funds from East Coast Optometric to foreign bank accounts.

15.   To obtain contracts with factoring companies for Shore Appliance and to receive cash into the bank accounts of Shore Appliance, **LARMORE** used his own email address, DLarmore@shoreappliance.com, and telephone number with factors but identified that email address and telephone number as belonging to Owner #1. When **LARMORE** dealt with factors, **LARMORE** provided the details of the identities of Owner #1 and Owner #2, including dates of birth, Social Security numbers, and Maryland drivers' licenses, without their permission.

16.   When factoring companies required witnessed or notarized signatures, the signatures of Owner #1 and Owner #2 were forged, and **FRANKLIN** witnessed or notarized the

fraudulent signatures.

17. When representatives of factoring companies wanted to speak by telephone with Owner #1, **LARMORE** posed as Owner #1.

18. When representatives of factoring companies wanted to speak by telephone with Owner #2, **LARMORE** asked for **FRANKLIN**'s assistance, and **FRANKLIN** connected **LARMORE** with Employee #1 of Accurate Optical, who posed as Owner #2.

19. When Accurate Optical and East Coast Optometric had financial problems, **FRANKLIN** asked **LARMORE,** and **LARMORE** provided, funds from Shore Appliance for **FRANKLIN**'s companies and **FRANKLIN**'s use.

18 U.S.C. §1349

**COUNT TWO**

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about October 11, 2016, in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, sounds, writings, signs and symbols, namely a wire transfer of $95,000 from the account ending in \*\*\*1301 of Shore Appliance, Hebron Savings Bank, Salisbury, Maryland, through the Federal Reserve system to the account ending in \*\*\*0454 of East Coast Optometric, Bank of America, Salisbury, Maryland, without the knowledge or approval of the owners of Shore Appliance, to make an investment in the lease of a "Standby Letter of Credit."

18 U.S.C. §§ 2, 1343

## COUNT THREE

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about October 11, 2016, in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate and foreign commerce, sounds, writings, signs and symbols, namely a wire transfer of $95,000 from the account ending in ***0454 of East Coast Optometric, Bank of America, Salisbury, Maryland, to the account of "Jioker]s [sic] Services UK Ltd," at Barclays Bank, London, United Kingdom to invest in a "Standby Letter of Credit" without the knowledge or approval of the owners of Shore Appliance.

18 U.S.C. §§ 2, 1343

## COUNT FOUR

The Grand Jury for the District of Maryland further charges:

1.  The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2.  On or about November 7, 2016 in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, sounds, writings, signs and symbols, namely a wire transfer of $300,000 from the account ending in ***1301 of Shore Appliance, Hebron Savings Bank, Salisbury, Maryland, through the Federal Reserve system to the account ending in ***0454 of East Coast Optometric, Bank of America, Salisbury, Maryland, without the knowledge or approval of the owners of Shore Appliance, to make a further investment.

18 U.S.C. §§ 2, 1343

## COUNT FIVE

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about November 7, 2016, in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate and foreign commerce, sounds, writings, signs and symbols, namely a wire transfer of $300,000 from the account ending in ***0454 of East Coast Optometric, Bank of America, Salisbury, Maryland, to the account ending in ***8989 of Getesi Trading Co., Ltd., 65 Des Vouex Road, Central Hong Kong at DBS Bank (Hong Kong) Limited, 11/F, The Center 99 Queen's Road Ce, Hong Kong Island, Hong Kong, to make an investment without the knowledge or approval of the owners of Shore Appliance.

18 U.S.C. §§ 2, 1343

## COUNT SIX

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about November 9, 2016, in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, sounds, writings, signs and symbols, namely **FRANKLIN**, on Wednesday, November 9, 2016, at 9:53 pm using his sfranklin.ceo@gmail.com account, returned to **LARMORE** through interstate email, the purported contract between PowerUp Lending Group, Ltd, and Shore Appliance with forged signatures of Owner #1 and Owner #2 including their signatures on the Affidavits of Confession of Judgment, which signatures were forged and were falsely notarized by **FRANKLIN** as signed and sworn in his presence.

18 U.S.C. § § 2, 1343

## COUNT SEVEN

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about November 15, 2017, in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, sounds, writings, signs and symbols, namely a cellular telephone call between Employee #1 of Accurate Optical in Salisbury, Maryland, posing as Owner #2, and a representative of Itria Ventures, a factoring company, confirming a purported agreement between Shore Appliance, Owner #2, and Itria Ventures, New York, New York, for Itria Ventures to provide in excess of $500,000 to, or for the prior factoring debts of, Shore Appliance, without the knowledge or approval of the owners of Shore Appliance.

18 U.S.C. §§ 2, 1343

## COUNT EIGHT

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about October 23, 2018, in the District of Maryland, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted in interstate commerce, sounds, writings, signs and symbols, namely a cellular telephone call between Employee #1 of Accurate Optical in Salisbury, Maryland, posing as Owner #2 of Shore Appliance, and a representative of Itria Ventures, a factoring company, confirming a purported agreement between Shore Appliance, Owner #2, and Itria Ventures, New York, New York, for Itria Ventures to provide in excess of $500,000 to, or for the prior factoring debts of, Shore Appliance, without the knowledge or approval of the owners of Shore Appliance.

18 U.S.C. §§ 2, 1343

## COUNTS NINE & TEN

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count One, Paragraphs 1-7 and 9-19 are incorporated by reference.

2. On or about the dates set forth below, in the District of Maryland and elsewhere, the Defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE**

did knowingly use, and cause the use without lawful authority, of a means of identification of another person; that is, **FRANKLIN** and **LARMORE** caused Accurate Optical Employee #1 to use the personal identifying information of Owner #2 of Shore Appliance, during and in relation to Wire Fraud, 18 U.S.C. § 1343:

| Count | Date | Use of Identity | Personal Identifying Information |
|---|---|---|---|
| 9 | November 15, 2017 | By Accurate Optical Employee No. 1 in a telephone call with an Itria Ventures Representative to confirm a "future receivables sales" agreement between Shore Appliance and Itria Ventures as described in Count Seven | Name of Owner #2 |
| 10 | October 23, 2018 | By Accurate Optical Employee No. 1 in a telephone call with an Itria Ventures Representative to confirm a "future receivables sales" agreement between Shore Appliance and Itria Ventures as described in Count Eight | Name of Owner #2 |

18 U.S.C. §§ 2, 1028(a)(1), (c)(4)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of a defendant's conviction of any of the offenses charged in Counts One – Eight.

2. Upon conviction of any of the offenses set forth in Counts One – Eight of this Indictment, the defendants,

**STEPHEN L. FRANKLIN and DUANE G. LARMORE,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of proceeds each defendant obtained as the result of his offenses of conviction.

### Substitute Assets

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c)

*Jonathan F. Lenzner* /jkmcd
Jonathan F. Lenzner
Acting United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

8/24/2021
Date